IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

RBA CAPITAL, LP,

Plaintiff,

v. Civil Action No. 3:08cv494

ALEXANDER J. ANONICK, JR.
and
ALEXANDER J. ANONICK, SR.,

Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on RBA Capital's Second Motion to Dismiss Counterclaim (Docket No. 30) filed by RBA Capital, LP ("RBA") and the Motion for Leave to Amend (Docket No. 35) filed by the defendants and counterclaim plaintiffs, Alexander J. Anonick, Jr. and Alexander J. Anonick, Sr.

## I. BACKGROUND

The dispute in this case arises out of a surety agreement allegedly signed by the Defendants, Alexander Anonick, Sr., and Alexander Anonick, Jr., for the benefit of RBA covering loans made by RBA to Leader Funding, LLC ("Leader LLC"). (Am. Compl. at ¶ 7.) The Anonicks are partial owners of Leader Funding, Inc., ("Leader Inc.") the corporation that wholly owned Leader LLC as a special

purpose vehicle. RBA alleges that Leader LLC defaulted on the underlying loan, and that the Anonicks then refused to make payments in accordance with the surety agreement. (Id. at ¶¶ 8-12.)

The Anonicks deny that the underlying loans were in default and thereby deny that they owe payment under the surety agreement. (Am. Ans. at ¶¶ 21-25.) In addition to denying their liability, the Anonicks have also asserted four counterclaims: Conversion, Fraud, Tortious Interference with Contract, and Misfeasance. Each of these counterclaims alleges wrongs done to Leader LLC. The Anonicks assert that, by virtue of their ownership of shares in Leader Inc., Inc. they were damaged by the same conduct. (See id. at ¶¶ 32, 42, 49, 56.)

RBA filed a motion to dismiss the counterclaims which was granted because the Anonicks never responded to it. (See Order, December 15, 2008 (Docket Number 25).) However, unknown to the Court, the Anonicks previously had been given an extension of time in which to respond to the motion by Magistrate Judge Dohnal, and the Order dismissing the counterclaims, therefore, was vacated. (See Order, January 27, 2009 (Docket Number 33).) RBA now has filed a second motion to dismiss the counterclaims and the Anonicks have filed both a response to that motion and a motion for leave to amend. (See Pl. Mem. at 1; Def. Mem. at 1.) For the reasons set forth below, the Second Motion to Dismiss Counterclaim (Docket No.

30) will be granted, and the Anonicks' Motion for Leave to Amend (Docket No. 35) will be denied.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court must take all factual allegations made in the complaint as true, and draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). However, in order to survive a Rule 12(b)(6) motion, the complaint must state the "grounds of [the claimant's] entitlement to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) (internal quotations omitted). The Fourth Circuit has emphasized that the complaint must "allege' enough facts to state a claim for relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting Bell Atlantic, 127 S.Ct. at 1974). In deciding the motion, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (quoting Eastern Shore, 213 F.3d at 180).

**B. Standing**

RBA's principal argument in support of the motion to dismiss the counterclaims is that the Anonicks lack standing to bring the claims. (Def. Mem. at 3.) The Anonicks argue that they possess standing by virtue of their financial interest created by the surety agreement and their status as shareholder/creditors of Leader Inc. (Pl. Mem. at 2.)

The Anonicks' brief argues that the surety agreement confers standing to assert the counterclaims. (Def. Mem. at 1-2.) The argument is based on a segment of text in the surety agreement which provides that: "due to the close business and personal relationship between the Borrower [Leader LLC] and the [Anonicks], whereby it is in the direct interest and benefit of the [Anonicks]." (Compl. at Ex. A.) It is difficult to discern how that language confers standing to assert the counterclaims. Nothing in the cited language confers standing on the Anonicks to sue for wrongs allegedly done to Leader LLC. Nor do the Anonicks explain how such a result flows from the cited language. (See Def. Mem. at 1-2.) Moreover, the rest of the Anonicks' brief and the text of the counterclaims make clear that they base their standing on their status as shareholders in Leader Inc.

The law in the Fourth Circuit is clear that a "shareholder - even the sole shareholder - does not have standing to assert claims

alleging wrongs to the corporation." Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1317 (4th Cir. 1994) (internal quotations omitted); accord Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 480 n.4 (2006). Shareholders or members lack standing where injury to them is merely derivative of the injury to the corporation. See id. The only recognized exception to this rule is when "the injury to individual stockholders results from a special duty owed to the stockholder by the wrongdoer and having an origin independent of plaintiff's status as stockholder." Id. While the suretyship agreement conceptually could have provided the predicate for such a special duty, no such duty actually is enumerated in the agreement. Indeed, the surety agreement is little more than a list of rights waived by the Anonicks. (See Am. Compl. at Ex. A.) Therefore, because the purported injuries were suffered directly by Leader LLC, and only derivatively, if at all, by the Anonicks, they cannot maintain an action seeking recompense for damage to Leader LLC, in their personal capacities or by virtue of their ownership of shares in Leader Inc.[1]

Similarly, the Anonicks have no state statutory source of standing to bring this action. It is certainly true that, as shareholders of Leader Inc., the Anonicks have a statutory right to

---

[1] Indeed, because the Anonicks own shares only in Leader Inc., their standing claim is of even less validity.

bring derivative actions on the part of the corporation in which they have partial ownership. See Va. Code Ann. § 13.1-672.1. However, one of the prerequisites to the assertion of such a claim is that the shareholder must make a written demand on the corporation to bring the suit and wait 90 days for the corporation to act. Id. at 13.1-672.1(B)(1), (2). This demand requirement is not a mere formality - it is a fundamental requirement for standing under the Virginia Stock Corporations Act. See Firestone v. Wiley, 485 F.Supp.2d 694, 701 (E.D.Va. 2007). Nor does Virginia does not recognize a futility exception to this rule. Thus, the demand must be made in every case. See id. The Anonicks have made no allegation indicating that they issued a required demand to Leader Inc. Evidently, the Anonicks have informed the other shareholders of Leader Inc. of their perception of RBA's actions, but no evidence of a demand to the appropriate officer is alleged. (Am. Ans. at ¶¶ 31, 42, 50, 56) Hence, the Anonicks cannot pursue their counterclaim as a derivative action, even if such a claim somehow could be asserted by Leader Inc. on account of the damage allegedly done to Leader LLC.

The Anonicks reliance on Virgina Code § 13.1-755 is similarly unavailing. (Def. Mem. at 2.) The Anonicks are correct that § 13.1-755 provides for the survivability of causes of action past the dissolution of a corporation. However, by the plain terms of the statute, the dissolved corporation continues to act in its own name

in such a proceeding. See Va. Code Ann. § 13.1-755. The statute also provides that shareholders of the dissolved corporation may take "appropriate" action to maintain their claims, i.e., that they may properly file a derivative suit. See id. Virginia precedent is clear that the operation of § 13.1-755 does not automatically transfer ownership of property rights, such as causes of action, to shareholders in the event of dissolution. See City of Virginia Beach v. Bell, 498 S.E.2d 414, 418 (Va. 1998). Therefore, invocation of the Virginia dissolved-corporations statute does not create standing for the Anonicks even if they somehow could show standing to press claims on behalf of Leader LLC.

Thus, the Anonicks have not alleged sufficient facts, even taken in the light most favorable to them, to establish their standing to make the claims enumerated in their Counterclaim. For the foregoing reasons, RBA's motion to dismiss those counterclaims will be granted. See Giarratano, 521 F.3d at 302.

**C. The Sufficiency of the Counterclaims**

Because the Anonicks do not have standing to bring their enumerated counterclaims, addressing the merits of those claims is not strictly necessary. However, an analysis of the substantive sufficiency of the counterclaims is useful in addressing the Anonicks' motion for leave to amend.

**1. Conversion**

The first counterclaim alleges conversion of Leader LLC's construction loan portfolio by RBA. (See Am. Ans. at ¶ 29.) To assert a claim for conversion under Virginia law, the plaintiff must allege and prove that he had "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." Airlines Reporting Corp. v. Pishvaian, 155 F.Supp.2d 659, 663 (E.D.Va. 2001). In other words, "[a]n action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." Economopoulos v. Kolaitis, 528 S.E.2d 714, 719 (Va. 2000).

Much like the plaintiffs in Economopoulos, the Anonicks were not entitled to possession of the construction loan portfolio at the time of the conversion. See 528 S.E.2d at 719-20. Instead, the portfolio was the property of Leader LLC. (Am. Ans. at ¶¶ 17, 30). The Anonicks themselves admit that they did not have a right to immediate possession of that portfolio. (Am. Ans. at ¶ 31.) Therefore, even assuming that the Anonicks had standing to bring a conversion action on the part of Leader LLC, their action does not meet the requirements of Virginia substantive law. Accordingly, the

counterclaim for conversion is insufficient as a matter of law. See Giarratano, 521 F.3d at 302.

**2. Fraud**

The second counterclaim is that Leader LLC relied on RBA's fraudulent misrepresentations when making loan payments to RBA. (Am. Ans. at ¶¶ 35-40.) In Virginia, an action for actual fraud requires the plaintiff to prove: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled" by clear and convincing evidence. Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 581 (Va. 2003).[2] These allegations must be made with specificity, and "must be accompanied by allegation and proof of damage." Klaiber v. Freemason Associates, Inc., 587 S.E.2d 555, 558 (Va. 2003).

Taking the counterclaim in the light most favorable to the Anonicks, the counterclaim clearly alleges the required elements for a claim of actual fraud on behalf of Leader LLC against RBA. (See Am.

---

[2] The elements set forth here are those of "actual fraud." Virginia also recognizes the tort of "constructive fraud," which only requires "that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation." Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 341-42 (Va. 2008). Since "[u]nder no circumstances, however, will a promise of future action support a claim of constructive fraud," and the Anonick's basis for the fraud claim involves a promise of future action, their allegations clearly will not support a claim for constructive fraud. Id. at 342; (Am. Ans. at ¶ 35).

Ans. at ¶¶ 33-42.) However, under Virginia law, only the party who actually relied on the alleged misrepresentation can maintain an action for actual fraud. See Van Deusen v. Snead, 441 S.E.2d 207, 209 (Va. 1994); Thompson v. Bacon, 425 S.E.2d 512, 514 (Va. 1993); see also Va. Prac. Products Liability § 6:7 (Gary J. Spahn et al. eds., 2008 ed.) ("both actual fraud and constructive fraud claims require proof of reliance by the injured party, as opposed to reliance by a third party"); Restatement (Second) of Torts § 531 (1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation"). The Anonicks do not allege their own reliance on any misrepresentation made by RBA. Hence, the counterclaim for actual fraud is substantively flawed.[3]

**3. Tortious Interference**

The third counterclaim is for tortious interference with a right of contract or business expectancy. (See Am. Ans. at ¶¶ 43-50.) In Virginia, a plaintiff asserting this claim must allege and prove:

> (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or

[3] RBA also argues that the Anonicks have not fulfilled the requirement of Fed. R. Civ. P. 9(b) to plead their fraud allegation with particularity. (Pl. Mem. at 8.) It is not necessary to address this argument.

> causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.

DurretteBradshaw, P.C. v. MRC Consulting, L.C., 670 S.E.2d 704, 706 (Va. 2009). The counterclaim does not allege that the Anonicks were parties to a disrupted contract. Therefore, they cannot be "the party whose relationship or expectancy has been disrupted." Id.

Furthermore, the Anonicks have not alleged or attempted to demonstrate that they were intended, though unnamed, third-party beneficiaries of the contract between Leader LLC and its shareholder/creditors. By statute, Virginia allows individuals who are not parties to contracts to pursue actions on those contracts if they are third-party beneficiaries. Va. Code. Ann. § 55-22. However, Virginia precedent is clear that individuals gain rights under that section only if they are *intended* third-party beneficiaries. See Ward v. Ernst & Young, 435 S.E.2d 628, 634-35 (Va. 1993) (a third-party beneficiary may bring claims as if they were a party to a contract; status of third party beneficiary is determined by the intent of the parties); see also Collins v. First Union National Bank, 636 S.E.2d 442, 446-47 (Va. 2006) (investors in a corporation are not automatically third-party beneficiaries to that corporation's contracts). Therefore, under Virginia law, the Anonicks have no viable claim for tortious interference because Leader LLC is the only party that putatively suffered damage as a result of the disruption

of a relationship or expectancy.[4] That counterclaim too is without merit.

**4. Misfeasance**

The fourth and final counterclaim asserted is for "misfeasance." (See Am. Ans. at ¶¶ 51-56.) RBA is correct that Virginia apparently does not recognize a separate action for misfeasance.[5] (Pl. Mem. at 5.) However, because pro se pleadings are to be interpreted with a high degree of lenity, it is necessary to consider the claims that the Anonicks might possibly intend to put forth given the factual allegations made in Count IV of their counterclaim. See Estelle v. Gamble 429 U.S. 97, 106 (1976).

The Anonicks allege that RBA notified Leader LLC's other creditors of the default of Leader LLC on RBA's loan pursuant to an inter-creditor agreement. (Am. Ans. at ¶ 52-53.) Allegedly, the debt

---

[4] Even if the Anonicks were creditors of Leader LLC, as they claim in their memorandum in opposition but not in their pleadings, there is no indication or allegation that the agreement between RBA and Leader LLC had them as an *intended* beneficiary; therefore, they are not cognizable third-party beneficiaries for purposes of establishing standing. See Ward, 435 S.E.2d at 634-45.

[5] Black's Law Dictionary defines "misfeasance" as "a lawful act performed in a wrongful manner." Black's Law Dictionary (8th Ed. 2004). This may be an apt description of RBA's alleged conduct, but it is not a separate cause of action except when relating to public officials at common law and otherwise statutorily. State v. Winne, 96 A.2d 63, 68 (1953). Indeed, in general, a cause of action arises out of an act of misfeasance - it is not a cause of action in and of itself. See First Virginia Bank-Colonial v. Baker, 301 S.E.2d 8, 11-12 (Va. 1983).

of Leader LLC to RBA was not in default at the time that letter was sent. (Id. at ¶ 54.) The Anonicks allege that RBA knew, when it sent this notification, that Leader LLC would be regarded as in default on its obligations to other creditors, as well. (Id. at ¶ 55.)

Assuming all of these allegations to be true, as is necessary at this stage of the proceedings, there are essentially two claims that the Anonicks might be attempting to pursue. See Giarratano, 521 F.3d at 302. The first is a tortious interference with contract claim, which is foreclosed for the reasons set forth above in Section II.C.3.

The Anonicks also might be intending to allege a breach of contract action, assuming that RBA's contract with Leader LLC specified the conditions under which a default could be declared and that RBA declared a default when none of those conditions existed. (See Compl. at Ex B. (defining Leader's alleged defaults).) However, there is no indication in the counterclaim that the Anonicks were parties to this contract, so they have no inherent right to bring a breach of contract action. See Ward, 435 S.E.2d at 634-45. Furthermore, as explained above, the Anonicks do not qualify as intended third-party beneficiaries, and therefore cannot maintain an action for breach of a contract under that theory, either. See Section II.C.3, supra.

Therefore, none of these theories of the counterclaim have substantive support in the relevant Virginia law, and they rightly could be dismissed on their merits, as well as for lack of standing.

**D. Leave to Amend**

Fed. R. Civ. P. 15(a)(2) provides that a defendant should be granted leave to amend its pleading "when justice so requires." Leave should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [or] futility of the amendment." Ward Elec. Serv. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

There is no indication of undue delay, bad faith, or a dilatory motive on the part of the Anonicks. However, RBA argues that the motion for leave to amend should be denied as futile. (Pl. Rep. at 2.) An amendment is futile if it would "fail[] to satisfy the requirements of the federal rules" or if it "is clearly insufficient or frivolous on its face." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (quoting United States ex rel. Fowler v. Caremark RX, LLC, 496 F.3d 730, 740 (7th Cir. 2007)); Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

As explained above, the Anonicks do not have standing to bring their asserted counterclaims against RBA, and, even if they did have standing, the counterclaims that they would present in an amended pleading simply do not meet the substantive requirements of Virginia law. These failures are not mere technical deficiencies of pleading. Instead, they are inherent in the nature of the relationship between the parties and, therefore, no possible amendment of these counterclaims will be sufficient to render them meritorious. Accordingly, leave to amend those claims will be denied as futile. See Wilson, 525 F.3d at 376.

## III. CONCLUSION

For the foregoing reasons, RBA's Second Motion to Dismiss Counterclaim (Docket No. 30) will be granted, and the Defendant's Motion for Leave to Amend (Docket No. 35) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 8, 2009